UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DREW PARSONS,

                 Plaintiff,

v.

CITY OF ANN ARBOR, et al.,

                 Defendants.

Case No. 2:20-cv-10486

HONORABLE STEPHEN J. MURPHY, III

_____/

## OPINION AND ORDER GRANTING IN PART AND
## DENYING IN PART DEFENDANTS' MOTION TO DISMISS [10]

Plaintiff Drew Parsons sued the City of Ann Arbor, its police department ("AAPD"), and several police officers. ECF 1. Plaintiff asserted 42 U.S.C. § 1983 claims against Defendants for excessive force in violation of his Fourth and Fourteenth Amendment rights. *Id.* at 6–8. Plaintiff also asserted several state law claims of assault and battery against Officers Kandt and Scott, *id.* at 9–10, gross negligence and intentional infliction of emotional distress ("IIED") against Sergeant Pulford, Officers Kandt, Scott, Shafer, and Chinn, *id.* at 10–13, and negligent supervision and training against the City and AAPD, *id.* at 14–15. Defendants moved to dismiss the complaint. ECF 10. In response, Plaintiff requested that the Court sanction Defendants under Federal Rule of Civil Procedure 11. ECF 13, PgID 119–20. The Court reviewed the briefs and finds that a hearing is unnecessary. *See* E.D. Mich. L.R. 7.1(f). For the reasons below, the Court will grant in part and deny in part the motion to dismiss and will deny the sanctions request.

1

## BACKGROUND

One night, Plaintiff was at an Ann Arbor bar. ECF 1, PgID 3. Plaintiff claimed that while he was inside the bar, "an altercation occurred and Plaintiff was misidentified as one of the individuals involved in the altercation." *Id.* Two bouncers then escorted Plaintiff out of the bar and Officer Kandt exited his patrol car and approached Plaintiff. *Id.*

Officer Kandt then allegedly "grabbed Plaintiff by the arm[,] pulled him over to the front [of] the police car" and told Plaintiff "to put his hands behind his back." *Id.* Plaintiff allegedly did not resist Officer Kandt, but the officer grabbed him "and forced him face-first onto the hood of the police car, trapping one of Plaintiff's arms between his chest and the hood of the police car." *Id.* at 4. Then Plaintiff alleged that Officer Kandt, "without hesitation, grabbed Plaintiff, picked him up, and body-slammed him face-first down onto the pavement." *Id.* While Plaintiff was on the ground, Officer Kandt called out that "he had 'one resisting.'" *Id.*

Shortly after the call, Officer "Scott arrived on scene[,]" "climbed on top of Plaintiff and began assisting [Officer] Kandt in executing the 'arrest' of Plaintiff." *Id.* Once the officers handcuffed Plaintiff, they lifted him "off of the ground and led him to the back of the police car." *Id.* Eventually, Sergeant Pulford and Officers Shafer and Chinn arrived on scene. *Id.*

As a result of the takedown, Plaintiff was "disoriented and bleeding profusely from his face[.]" *Id.* at 5. Shortly after, an ambulance arrived on scene to treat Plaintiff for his injuries and transport him to the hospital. *Id.*

2

Last, Plaintiff also alleged that the City and AAPD were "grossly negligent" and had "official policies, practice[s], orders, directives, or customs, which tolerated, authorized, and/or permitted insufficient supervision, training, placement, and discipline of" the officers that caused Plaintiff's injuries. *Id.* at 6.

## LEGAL STANDARD

The Court may grant a Rule 12(b)(6) motion to dismiss if the complaint fails to allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual assertions, and draws every reasonable inference in the nonmoving party's favor. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

But the Court will not presume the truth of legal conclusions in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true or not," then the Court must dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

The Court may also rely on video evidence if the "video 'utterly discredit[s]' [Plaintiff's] version of events and allows [the Court] to ignore the 'visible fiction' [of] his complaint." *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017) (quoting *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)). But the Court cannot employ video

evidence if "the video captured only part of the incident or would distort [the Court's] view of the events." *Id.* (citation omitted).

## DISCUSSION

To support the motion to dismiss, Defendants attached videos recorded on the officers' body cameras and on the dashboard cameras of the officers' patrol cars. ECF 11. The Court will first discuss whether the Court may rely on the videos to resolve the motion. After, the Court will address the individual claims against the officers and then the claims against the City and AAPD. Last, the Court will discuss Plaintiff's request for sanctions.

I.   Attached Videos

Defendants first contended that the Court should consider evidence from outside the complaint to resolve the motion to dismiss, ECF 10, PgID 70–72, including several videos that recorded the incident, ECF 11. Although the Court has reviewed the videos, the Court will not rely on the videos because the events in the video do not satisfy the high bar of "utterly discredit[ting]" Plaintiff's allegations. *Bailey*, 860 F.3d at 386 (quoting *Scott*, 550 U.S. at 380–81).

Two videos recorded the alleged events: Officer Kandt's body camera video and the video from his patrol car's dashboard. Both videos show a very quick interaction between Officer Kandt and Plaintiff that ends with Officer Kandt bringing Plaintiff to the ground. There is a lot of yelling, no indication that Plaintiff was violent towards Officer Kandt, and no indication that Plaintiff fled, *see* ECF 11, although the argument that Plaintiff resisted the officer is certainly colorable.

4

The complaint alleged that Officer Kandt "body-slammed" Plaintiff while Plaintiff was "attempting to comply with [Officer] Kandt's orders[.]" ECF 1, PgID 4. An excessive force claim "depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007). Without more evidence about the encounter, a reasonable jury could find that Plaintiff's excessive force claim has merit. *Thomas v. Noder-Love*, 621 F. App'x 825, 830 (6th Cir. 2015). The videos therefore do not "utterly discredit" Plaintiff's excessive force claim and the Court will not consider the videos at the motion to dismiss stage. *Bailey*, 860 F.3d at 386 (quoting *Scott*, 550 U.S. at 380–81). The Court will now address the claims to dismiss the complaint.

II.    Section 1983 Claims Against Officers Shafer, Chinn, and Sergeant Pulford

For the § 1983 claims against Officers Shafer, Chinn, and Sergeant Pulford, each officer asserted that the complaint fails to state a claim against them. ECF 10, PgID 72–73. The complaint alleged that the three officers violated Plaintiff's right against police use of excessive force. ECF 1, PgID 6–8.

"A plaintiff who claims that a defendant used excessive force must show that the officer '(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force.'" *Fazica v. Jordan*, 926 F.3d 283, 289 (6th Cir. 2019) (quoting *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010)). Plaintiff's claims

against Officers Shafer, Chinn, and Sergeant Pulford stem from the officers' "duty to protect Plaintiff from the use of excessive force[.]" ECF 13, PgID 110.

The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 685 (6th Cir. 2008) (emphasis in original) (citing *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 842 (6th Cir. 2002)). Because of that, the Court must "analyze separately whether [Plaintiff] has stated a plausible constitutional violation by each individual defendant, and [] cannot ascribe the acts of all Individual Defendants to each individual defendant." *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 565 (6th Cir. 2011) (citations omitted). The Court will sequentially analyze the claims against Officer Shafer, Officer Chinn, and Sergeant Pulford.

A.    *Officer Shafer*

The complaint alleged that Shafer "arrived on scene" after Officers Kandt and Scott handcuffed Plaintiff and "lifted [him] off of the ground and led him to the back of the police car." ECF 1, PgID 4. In other words, Officer Shafer arrived on scene *after* the alleged excessive force occurred. The complaint made no other specific reference to Officer Shafer. *See* ECF 1.

The Sixth Circuit has held that an "officer who *fails* to act to prevent the use of excessive force may still be held liable" if two conditions are met. *Fazica*, 926 F.3d at 290 (emphasis in original). First, "the officer observed or had reason to know that

6

excessive force would be or was being used, and [second] the officer had both the opportunity and the means to prevent the harm from occurring." *Id.* (quoting *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008)). Put differently, "mere presence at the scene . . . without a showing of direct responsibility for the action, will not subject an officer to liability." *Binay*, 601 F.3d at 650 (quoting *Ghandi v. Police Dep't of the City of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984)).

The § 1983 claim against Officer Shafer fails because Plaintiff alleged that Officer Shafer arrived on scene after the alleged excessive force took place. Thus, based on Plaintiff's own allegations, Officer Shafer did not plausibly have "the opportunity [or] the means to prevent the [alleged excessive force] from occurring." *Floyd*, 518 F.3d at 406. The § 1983 claim against Officer Shafer is therefore dismissed for failure to state a claim.

> B.   *Officer Chinn*

For the same reasons that the Court dismissed the § 1983 claim against Officer Shafer, the Court will dismiss the § 1983 claim against Officer Chinn for failure to state a claim. The only action the complaint alleged by Officer Chinn was that he arrived on scene after the alleged excessive force occurred. ECF 1, PgID 4. Like Officer Schafer, it is implausible that Officer Chinn had "the opportunity [or] the means to prevent the [alleged excessive force] from occurring." *Floyd*, 518 F.3d at 406.

> C.   *Sergeant Pulford*

Plaintiff also alleged that Sergeant Pulford arrived on scene after the alleged excessive force occurred. ECF 1, PgID 4. For that reason, the Court will dismiss the

§ 1983 claim against Sergeant Pulford under the same standard that applied to Officers Shafer and Chinn. *Fazica*, 926 F.3d at 290. Plaintiff has not plausibly alleged that Sergeant Pulford "had reason to know that excessive force would be or was being used" or that he "had both the opportunity [or] the means to prevent the [alleged excessive force] from occurring." *Id.* (quoting *Floyd*, 518 F.3d at 406). The Court will therefore dismiss the § 1983 claim against Sergeant Pulford for failure to state a claim.

III.   <u>Section 1983 Claim Against Officers Kandt and Scott</u>

For the § 1983 claims against Officers Kandt and Scott, both officers asserted qualified immunity defenses. ECF 10, PgID 73–79. Qualified immunity "'shield[s]' public officials from money-damages liability if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

"To survive the motion to dismiss on qualified-immunity grounds, [P]laintiff must allege facts that plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (quotation omitted). "[P]laintiff also must allege with particularity facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Id.* (quotation

omitted) (emphasis in original). And "[P]laintiff bears the burden of showing that an officer is not entitled to the defense of qualified immunity." *Id.* (citation omitted).

"[T]he right to be free from the excessive use of force is a clearly established Fourth Amendment right." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004) (quoting *Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir. 2001)). For excessive force claims, "the question is whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *King v. United States*, 917 F.3d 409, 429–30 (6th Cir. 2019) (quoting *Graham v. Connor*, 490 US. 386, 397 (6th Cir. 1989)) (alternations in original).

"[T]o determine whether the use of force in a particular situation was reasonable, th[e] Court must look to the totality of the circumstances." *Id.* at 430 (citing *Graham*, 490 U.S. at 396). And for that assessment, the Court weighs the "three [*Graham*] factors: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *King*, 917 F.3d at 430 (citation omitted). The Court will first consider the claim against Officer Scott and then address the claim against Officer Kandt.

### A.    Officer Scott

The Court will dismiss the § 1983 claim against Officer Scott because Plaintiff has not plausibly alleged facts to support a finding that Officer Scott's conduct violated a constitutional right. For example, the complaint merely alleged that Officer

Scott "arrived on scene" after Officer Kandt "stat[ed] that he had 'one resisting'" and then Officer Scott allegedly "climbed on top of Plaintiff and began assisting [Officer] Kandt in executing the 'arrest' of Plaintiff." ECF 1, PgID 4. The officers then promptly handcuffed Plaintiff and moved him to the patrol car until an ambulance arrived. *Id.* at 4–5.

When viewing the allegations under the *Graham* factors, Officer Scott is entitled to qualified immunity because Plaintiff did not plausibly plead a constitutional violation. First, the complaint confirmed that Officer Scott "arrived on scene" in response to Officer Kandt's call for back-up to Plaintiff resisting arrest. ECF 1, PgID 4. That allegation leads only to one plausible inference: Officer Scott did not witness the initial interaction between Officer Kandt and Plaintiff. *See id.* Plaintiff also failed to allege that Officer Scott's responsive conduct was unreasonable because his conduct is "viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Fox*, 489 F.3d at 236.

The complaint alleged that Officer Scott placed his body on top of Plaintiff—a non-neutralized arrestee—because Officer Kandt told him that Plaintiff was resisting arrest. ECF 1, PgID 4. But Officer Scott merely placing his body on top of Plaintiff is not unreasonable.

For example, Plaintiff never alleged that Officer Scott inflicted gratuitous violence during the arrest. *See Morrison v. Bd. of Trs. of Green Tp.*, 583 F.3d 394, 407 (6th Cir. 2009) (citing *Pigram ex rel. Pigram v. Chaudoin*, 199 F. App'x. 509, 513 (6th Cir. 2006) ("[A] slap to the face of a handcuffed suspect—even a verbally unruly

suspect—is not a reasonable means of achieving anything more than perhaps further antagonizing or humiliating the suspect.")). Plaintiff also never alleged that Officer Scott used "'substantial or significant pressure' that create[d] asphyxiating conditions[.]" *Martin v. City of Broadview Heights*, 712 F.3d 951, 961 (6th Cir. 2013). And Plaintiff never alleged that Officer Scott placed his body weight on him after handcuffing or neutralizing Plaintiff. *See Hopper v. Phil Plummer*, 887 F.3d 744, 755 (6th Cir. 2018) ("[T]he prohibition against placing weight on [an arrestee's] body after he was handcuffed [is] clearly established in the Sixth Circuit[.]") (quoting *Martin*, 712 F.3d at 961).

Indeed, the complaint alleged just the opposite. Once the officers handcuffed Plaintiff, they then "lifted Plaintiff off of the ground and led him to the back of the police car." ECF 1, PgID 4. Plaintiff thus failed to allege that Officer Scott used "physical force on a citizen who ha[d] been arrested and restrained, who [was] securely under the control of the police, and who [was] not attempting to escape." *Goodrich v. Everett*, 193 F. App'x 551, 556 (6th Cir. 2006) (quotation omitted) (collecting cases).

In short, Plaintiff alleged no facts to show that Officer Scott committed a constitutional violation. *See Bozung v. Rawson*, 439 F. App'x 513, 521 (6th Cir. 2011) (holding that an officer acted reasonably when he placed his knee on a non-neutralized arrestee's back to handcuff the arrestee) (citations and quotations omitted). The Court will therefore grant Officer Scott qualified immunity on the § 1983 claim.

B.    *Officer Kandt*

The Court will not dismiss the § 1983 claim against Officer Kandt. The complaint alleged that Officer Kandt saw two bouncers escorting Plaintiff out of a bar. ECF 1, PgID 3. Officer Kandt then "grabbed Plaintiff by the arm and pulled him over to the front the police car, instructing Plaintiff to . . . to put his hands behind his back." *Id.* "[W]hile [Plaintiff was] attempting to be compliant . . . and without putting up any resistance," Officer Kandt "grabbed Plaintiff and forced him face-first onto the hood of the police car[.]" *Id.* at 3–4. And "without any hesitation, [Officer Kandt then] grabbed Plaintiff, picked him up, and body-slammed him face first down onto the pavement." *Id.* at 4.

Altogether, Plaintiff plausibly alleged an excessive force claim under the *Graham* factors. First, based on the allegations in the complaint, it is unclear what crime Officer Kandt thought Plaintiff committed. *See* ECF 1, PgID 3–4. Rather, Plaintiff alleged that the bouncers had misidentified him and escorted him out of the bar. *Id.* at 3. Thus, the first factor weighs in Plaintiff's favor. Second, based on the allegations in the complaint, Plaintiff was not a threat to the officers or others because the complaint never suggested that Plaintiff had been violent towards the bouncers. *See id.* And third, the complaint alleged several times that Plaintiff was complying with Officer Kandt's requests and not resisting arrest. *Id.* at 3–4.

Based on the totality of the circumstances, the complaint plausibly alleged that "body slam[ing]" Plaintiff on the ground, "face-first[,]" was unreasonable. *Id.* at 4; *see Harris v. Langley*, 647 F. App'x 585, 590 (6th Cir. 2016) (finding that the Fourth

Amendment clearly prohibits "unprovoked body slams from police officers"). What is more, "slamming an arrestee into a vehicle constitutes excessive force when the offense is non-violent, the arrestee posed no immediate safety threat, and the arrestee had not attempted to escape and was not actively resisting." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254 (6th Cir. 2010) (citing *Graham*, 490 U.S. at 396). In all, Plaintiff plausibly pleaded an excessive force claim, and the Court will not dismiss the § 1983 claim against Officer Kandt.

That said, the Court does not have enough of a factual record to resolve Officer Kandt's qualified immunity claim at this time. *See Hart v. Hillsdale Cnty., Mich.*, 973 F.3d 627, 635 (6th Cir. 2020) ("[I]t is often perilous to resolve a Rule 12(b)(6) motion on qualified immunity grounds because development of the factual record is frequently necessary to decide whether the official's actions violated clearly established law.") (alterations in original) (quotation omitted). Officer Kandt may therefore reassert his qualified immunity defense in a summary judgment motion. *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015) ("Although an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12.") (internal marks and citations omitted).

IV.   <u>Assault and Battery Claims Against Officers Kandt and Scott</u>

Plaintiff alleged that Officers Kandt and Scott committed assault and battery. ECF 1, PgID 9–10. "Under Michigan law, an assault is defined as 'an attempt to commit a battery or an unlawful act which places another in reasonable apprehension

13

of receiving an immediate battery.'" *Binay*, 601 F.3d at 653 (quoting *Grawey v. Drury*, 567 F.3d 302, 315 (6th Cir. 2009)). "A battery is defined as 'an unintentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person.'" *Id.* (quoting *Grawey*, 567 F.3d at 315).

Officers Kandt and Scott also asserted qualified immunity defenses to the claims. ECF 10, PgID 80–82. Under Mich. Comp. Laws § 691.1407(2), the officers are entitled to immunity for tort claims if they satisfy three elements. First, the officers must act during their employment. *Odom v. Wayne Cnty.*, 482 Mich. 459, 480 (2008). Second, the officers must act in good faith. *Id.* And third, the officer's actions must have been discretionary. *Id.*

The only factor in dispute here is the good faith factor. The test to measure good faith "is subjective in nature." *Id.* at 482. Officers lack good faith when they act with a "malicious intent, capricious action or corrupt conduct or willful and corrupt misconduct[.]" *Id.* at 474 (internal citations and quotations omitted). Put differently, Defendants "must establish that [they] acted without malice." *Id.* at 475. And contrary to Defendants' position, ECF 10, PgID 81–82, "[t]he burden continues to fall on the governmental employee to raise and prove his entitlement to immunity as an affirmative defense." *Odom*, 482 Mich. at 479. The Court will first address the claims against Officer Scott.

A.   *Officer Scott*

The Court must view the facts "from the perspective of [the] defendant[.]" *Latits v. Phillips*, 298 Mich. App. 109, 116 (2012). From that perspective, there is no

14

evidence that Officer Scott "acted in bad faith, much less that malice was a factor." *Estate of Hill by Hill v. Miracle*, 853 F.3d 306, 317 (6th Cir. 2017). As explained above, the complaint alleged that Officer Scott responded to Officer Kandt's call that Plaintiff was resisting arrest. ECF 1, PgID, 4. When Officer Scott arrived on scene, he used limited force on Plaintiff and once Plaintiff was handcuffed, Officer Scott placed him in the patrol car until an ambulance arrived. *Id.* at 4–5. Because the allegations in the complaint alleged only that Officer Scott "acted in an objectively reasonable manner with the minimum force necessary to bring [Plaintiff] under control," the Court will grant Officer Scott qualified immunity to the assault and battery claims for failure to establish that Officer Scott acted in bad faith. *Miracle*, 853 F.3d at 318.

B. *Officer Kandt*

When viewing the allegations in the complaint from Officer Kandt's perspective, Plaintiff has plausibly asserted that Officer Kandt acted with malice. The Michigan Supreme Court defines "malicious intent" as "conduct or a failure to act that was intended to harm the plaintiff . . . [or] that shows such indifference to whether harm will result as to be equal to a willingness that harm will result." *Odom*, 482 Mich. at 475. The complaint alleged that Plaintiff was trying to cooperate with Officer Kandt and was not resisting Officer Kandt's commands. ECF 1, PgID 3–4. Despite the alleged cooperation, Officer Kandt allegedly threw Plaintiff to the ground. *Id.*

Without more facts, the Court cannot foreclose the possibility that Officer Kandt's behavior "show[ed] such indifference to whether harm [would] result as to be equal to a willingness that harm [would] result." *Odom*, 482 Mich. at 475; *see Brown v. Lewis*, 779 F.3d 401, 420–21 (6th Cir. 2015) (holding that an officer who threw a plaintiff to the ground despite the plaintiff cooperating with their orders did not foreclose the possibility that the officer acted maliciously). The Court will therefore deny the motion to dismiss. Officer Kandt may raise the qualified immunity defense in a summary judgment motion after developing the factual record.

## V.    Gross Negligence Claims Against the Officers

Plaintiff also alleged that the officers committed gross negligence under Mich. Comp. Laws §§ 691.1407(2)(c) & (8)(a). ECF 1, PgID 10–12. But "gross negligence" "is not an independent cause of action." *Beltz v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011); *see also Brent v. Wayne Cnty. Dep't of Human Servs.*, 901 F.3d 656, 700–01 (6th Cir. 2018) ("Michigan's immunity statute does not, however, provide an independent cause of action for 'gross negligence,' and plaintiffs may not bypass the immunity statute by 'transforming intentional excessive force or battery claims into negligence claims.'") (quotation omitted). The Court will therefore dismiss the gross negligence claim against the officers for failure to state a claim.

## VI.   IIED Claims Against the Officers

Plaintiff also alleged an IIED claim against the officers. ECF 1, PgID 13. To plead an IIED claim "under Michigan law, a plaintiff must show extreme and outrageous conduct, intent or recklessness, causation, and severe emotional distress."

16

*Brent*, 901 F.3d at 678 (citing *Jones v. Muskegon Cty.*, 625 F.3d 935, 948 (6th Cir. 2010)). "Such conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* (quoting *Jones*, 625 F.3d at 948). That said, "[a] defendant with an intent to cause tortious or even criminal harm is not enough, nor is an intent to inflict emotional distress, nor malice or conduct that might entitle a plaintiff to punitive damages for another tort." *McGrew v. Duncan*, 333 F. Supp. 3d 730, 742 (E.D. Mich. 2018) (citing *Polk v. Yellow Freight Sys., Inc.*, 801 F.2d 190, 195 (6th Cir. 1986)). The Court will first address the IIED claims against Officers Shafer, Chinn, and Sergeant Pulford, and then the Court will address the claims against Officers Scott and Kandt.

A.     *Officers Shafer, Chinn, and Sergeant Pulford*

The complaint specifically alleged that Officers Shafer and Chinn, and Sergeant Pulford arrived on scene after the alleged excessive force occurred. ECF 1, PgID 4. That bare allegation cannot establish an IIED claim because it lacks any showing of extreme or outrageous conduct. *See Brent*, 901 F.3d at 678. As a result, the Court will dismiss the IIED claim against Officers Shafer and Chinn, and Sergeant Pulford for failure to state a claim.

B.     *Officer Scott*

For Officer Scott, the Court will dismiss the IIED claim because Plaintiff has not plausibly shown that Officer Scott acted in an extreme and outrageous manner. For one, the complaint alleged that Officer Scott "arrived on scene" after Officer

17

Kandt "stat[ed] that he had 'one resisting.'" ECF 1, PgID 4. Officer Scott then allegedly "climbed on top of Plaintiff and began assisting [Officer] Kandt in executing the 'arrest' of Plaintiff." *Id.* "After handcuffing Plaintiff, Defendants Kandt and Scott lifted Plaintiff off of the ground and led him to the back of the police car." *Id.* Plaintiff remained in the car until an ambulance arrived. *Id.* at 5. That conduct alone can hardly be called extreme and outrageous. *See Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 603 (1985) (holding that the test for IIED is "one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"). Thus, the IIED claim against Officer Scott is dismissed for failure to state a claim.

C.    *Officer Kandt*

The Court will also dismiss the IIED claim against Officer Kandt. Plaintiff alleged that Officer Kandt used excessive force to carry out an arrest. ECF 1, PgID 3–4. "[W]hen courts have analyzed IIED claims brought by plaintiffs against officers based on conduct during the course of an arrest, the courts 'have not equated excessive force with outrageous conduct.'" *Avery v. Neverson*, No. 18-11752, 2020 WL 3440576, at *3 (E.D. Mich. Apr. 3, 2020) (quoting *Valdex v. United States*, 58 F. Supp. 3d 795, 831 (W.D. Mich. 2014)). And courts throughout the Eastern District of Michigan have interpreted Michigan law so that an officer's excessive force cannot support an IIED claim. *Henderson v. Jackson*, No. 15-10807, 2016 WL 3125214, at *12 (E.D. Mich. June 3, 2016) ("The plaintiff has presented ample evidence that [the defendant] intended to cause *physical* injury upon [the plaintiff], but there is no

18

evidence that the defendant intended to inflict emotional trauma." "The plaintiff has not cited a single case in which a police officer's excessive force—even the use of deadly force—has been found to support an IIED claim. In fact, Michigan law suggests the contrary.") (emphasis in original) (citation omitted).

What is more, Plaintiff asserted no allegations beyond mere conclusory statements that Officer Kandt intended to cause emotional distress. *See* ECF 1. Based on the complaint's allegations and Michigan law, the Court cannot infer that Officer Kandt plausibly intended to cause emotional injury to Plaintiff. *See Fleming v. Scruggs*, 465 F. Supp. 3d 720, 748 (E.D. Mich. 2020) (granting summary judgment because no evidence showed that the defendant intentionally caused emotional distress). In all, the Court will dismiss the IIED claim against Officer Kandt for failure to state a claim.

## VII. Claims Against the AAPD

The Court will dismiss the claims against AAPD because it is not a proper Defendant. Under Michigan Law, municipal police departments are "subsumed" within a municipality "as a municipal entity" and therefore cannot be "included as a separate defendant[.]" *Boykin v. Van Buren Tp.*, 479 F.3d 444, 450 (6th Cir. 2007) (citing *Laise v. City of Utica*, 970 F. Supp. 605, 609 (E.D. Mich. 1997)).

## VIII. Section 1983 Claim Against the City

For the City to be liable under § 1983, Plaintiff "must establish that a governmental policy or custom caused [his] alleged injury." *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998) (citing *Monell v. Dept. of Soc. Servs. of*

19

*N.Y.C.*, 436 U.S. 658, 690–91 (1979)). "This means that [P]laintiff must show a direct causal link between the policy and the alleged constitutional violation such that the [municipal policy] can be deemed the 'moving force' behind the violation." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 402 (6th Cir. 2016) (alteration in original).

But Plaintiff inadequately alleged the elements of municipal liability. The complaint included only "facts that are merely consistent with a defendant's liability." *Iqbal*, 556 U.S. at 678 (quotations omitted). For example, Plaintiff alleged that "Defendant[] City [has], with deliberate indifference to Plaintiff's rights and the rights of persons with whom members of [AAPD] come into contact, caused Plaintiff to be deprived of his [c]onstitutional rights under the Fourth and Fourteenth Amendments[.]" ECF 1, PgID 8. Plaintiff also alleged that "Defendant[] City [has], as a matter of custom, policy and/or practice, failed to adequately screen, train, supervise, discipline, transfer, counsel or otherwise direct or control police officers concerning the rights of citizens with whom the police come into contact, including Plaintiff . . . ." *Id.* at 8–9. And yet those allegations are all legal conclusions.

Simply put, Plaintiff asserted no facts against the City beyond the single instance of Officer Kandt's alleged misconduct. *See* ECF 1. In other words, the complaint showed no evidence of a pattern or practice of deliberate indifference. One instance alone cannot establish that the City had a custom of deliberate indifference to Plaintiff's constitutional rights. *Griffith v. Franklin Cnty., Ky.*, 975 F.3d 554, 583 (6th Cir. 2020) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir.

2005)) ("[Plaintiff] cannot rely solely on a single instance to infer a policy of deliberate indifference.").

Because Plaintiff failed to plead any allegations beyond legal conclusions and one instance of alleged misconduct, the *Monell* claim fails. *See Bright v. Gallia Cnty., Ohio*, 753 F.3d 639, 652 (6th Cir. 2014). The Court will therefore dismiss the § 1983 claims against the City for failure to state a claim.

IX.  Negligent Supervision and Training Against the City

In Michigan, "[a] governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." *Mack v. City of Detroit*, 467 Mich. 186, 197–98 (2002) (citing Mich. Comp. Laws § 691.1407(1)). To that end, "[i]t is well established in Michigan that the management, operation, and control of a police department is a governmental function." *Id.* at 204 (citations omitted). And here, "Plaintiff's claims regarding the police department all involve decisions that are part and parcel of the department's discharge of governmental functions." *Id.*; *see* ECF 1, PgID 14 (explaining that the police department must "exercise proper care in adequately hiring, screening, training, supervising, disciplining, transferring, or otherwise directing or controlling their police officers").

"If Plaintiff wants to avoid governmental immunity, he must plead specific facts for why it does not apply." *Marshall v. Wayne Cnty.*, No. 2:19-12515, 2020 WL 5505382, at *5 (E.D. Mich. Sept. 11, 2020) (Murphy, J.) (citations omitted). Plaintiff suggested that immunity does not apply because the alleged conduct amounted "to

21

gross negligence[,]" which "is an exception to governmental immunity." ECF 1, PgID 15. But no such exception exists.

For one, the Government Tort Liability Act's ("GTLA's") gross negligence exception applies only to an "officer[,]" "employee[,]" or "volunteer acting on behalf of a governmental agency[.]" Mich. Comp. Laws § 691.1407(2)(c). The plain text of the GTLA states that "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." § 671.1407(1).

Plaintiff reasoned that "[t]here are other areas outside the GTLA where the [Michigan] Legislature has allowed specific actions against the government to stand, such as the Civil Rights Act and liability pursuant to 42 U.S.C. § 1983." ECF 13, PgID 119 (citations omitted). But those exceptions still do not save Plaintiff's claims because Plaintiff is not suing under the Elliott-Larsen Civil Rights Act and the Court already dismissed the *Monell* claim. *See Chambers v. City of Detroit*, 786 F. Supp. 2d 1253, 1271 (E.D. Mich. 2011) (noting that there are few exceptions "outside of the GTLA" where "specific actions against the government [] may go forward"). Without specific facts for why governmental immunity does not apply, the City has immunity under the GTLA. The Court will therefore dismiss the negligent supervision and training claims against the City.

## X.    Request for Rule 11 Sanctions

Under Rule 11(b), when an attorney signs a pleading, he or she is certifying to the Court that the pleading is "not being presented for any improper purpose, such

as to . . . cause unnecessary delay[.]" Fed. R. Civ. P. 11(b)(1). When the Court determines that a party has violated Rule 11(b), it "*may* impose an appropriate sanction" on the party. Fed. R. Civ. P. 11(c)(1) (emphasis added). But when a party moves for Rule 11 sanctions, the rule itself sets out three steps the party must follow.

First, "[a] motion for sanctions must be made separately from any other motion[.]" Fed. R. Civ. P. 11(c)(2). Second, that motion "must describe the specific conduct that allegedly violates Rule 11(b)." *Id.* And third, the party must follow the so-called safe-harbor requirement. *Id.* The safe-harbor provision requires that a party must formally serve the sanctions motion on the opposing party and then wait twenty-one days to file the motion with the Court. *Id.* "Failure to comply with the safe-harbor provision precludes imposing sanctions on the party's motion." *Penn, LLC v. Prosper Bus. Dev. Corp.*, 773 F.3d 764, 767 (6th Cir. 2014) (citations omitted).

Plaintiff did not follow the steps of Rule 11(c). Plaintiff filed no separate request for sanctions. ECF 13, PgID 119–20. And Plaintiff offered no evidence that he adhered to the safe-harbor provision. *Id.; see also* Fed. R. Civ. P. 11(c)(2). Because Plaintiff failed to follow the proper procedures, the Court will deny the request to impose sanctions.

### CONCLUSION AND ORDER

In sum, the Court grants in part and denies in part the motion to dismiss. ECF 10. All claims against Sergeant Pulford, Officer Chinn, and Officer Schafer are dismissed for failure to state a claim. The IIED and gross negligence claims against all officers are dismissed for failure to state a claim. Officer Scott is entitled to

qualified immunity under the § 1983 claim and the assault and battery claims. The claims against AAPD are dismissed for failure to state a claim. The City is entitled to GTLA immunity on the negligent supervision and training claim. The § 1983 claim against the City is dismissed for failure to state a claim.

The only remaining claims are the § 1983 excessive force claim and the assault and battery claims against Officer Kandt. The Court will require Officer Kandt to answer the complaint no later than March 24, 2021. And finally, the Court will deny Plaintiff's request for Rule 11 sanctions.

**WHEREFORE**, it is hereby **ORDERED** that the motion to dismiss [10] is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that the claims against Officers Chinn, Schafer Scott, Sergeant Pulford, City of Ann Arbor, and the Ann Arbor Police Department are **DISMISSED**.

**IT IS FURTHER ORDERED** that the IIED and gross negligence claims against Officer Kandt are **DISMISSED**.

**IT IS FURTHER ORDERED** that Officer Kandt must **ANSWER** the complaint no later than **March 24, 2021**.

**IT IS FURTHER ORDERED** that Plaintiff's request for Rule 11 sanctions is

**DENIED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: March 2, 2021

I hereby certify that a copy of the foregoing document was served upon the parties
and/or counsel of record on March 2, 2021, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager

25