UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DREW PARSONS,

                Plaintiff,

v.

CITY OF ANN ARBOR, et al.,

                Defendants.

_____/

Case No. 2:20-cv-10486

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER
GRANTING SUMMARY JUDGMENT MOTION [30]**

The only claims that remain in the present civil rights case are those against

Officer Kandt for excessive force under 42 U.S.C. § 1983 and assault and battery

under Michigan law. ECF 15, PgID 156. Kandt moved for summary judgment based

on qualified immunity for the § 1983 claim and state-law immunity for the assault

and battery claims. ECF 30. The parties briefed the motion, and the Court held a

hearing. The Court will grant the motion because Officer Kandt has a right to

qualified and state law immunity.

**BACKGROUND**

One fall night, Plaintiff Drew Parsons was at a college bar called Scorekeepers

in Ann Arbor, Michigan. ECF 31, PgID 343. Bouncers at the bar were escorting

Plaintiff outside because, according to the bar manager, Plaintiff was "quite

intoxicated" and "was being creepy . . . to some of the female patrons." *Id.* at 316.

When the bouncers escorted Plaintiff outside, he was "pretty combative, was kind of

flailing around a lot, . . . [and] swearing." *Id.* During the escort, Plaintiff swung at the manager and punched him in the face. *Id.* at 316, 320. Shortly after, the bouncers successfully removed Plaintiff from the bar. *Id.* at 319.

At that moment, however, Officer Kandt[1] was sitting in his patrol car outside the bar with a ride-along[2] in the front seat. ECF 11,[3] body camera video at 5:20–5:30, dash camera video at 3:55–4:02; ECF 31, PgID at 341–42. Kandt first noticed Plaintiff when the ride-along pointed to the commotion outside Scorekeepers. ECF 11, body camera video at 5:30–5:38, dash camera video at 4:02–4:08; ECF 31, PgID 342. Kandt saw the dispute involving Plaintiff and left the patrol car. ECF 11, body camera video at 5:38–5:44, dash camera video at 4:08–4:15; ECF 31, PgID 342. At first glance, Plaintiff's shirt was in disarray and unbuttoned. ECF 11, body camera video at 5:44–5:47, dash camera video at 4:12–4:19; ECF 31, PgID 343. When Kandt approached Plaintiff, a bouncer told Kandt that Plaintiff had "knocked" the bar manager "in the face." ECF 11, body camera video at 5:47–5:50; ECF 31, PgID 343. Kandt understood that the incident would have been a misdemeanor for simple assault. ECF 31, PgID 343.

Shortly after Kandt learned of the assault, Plaintiff started mouthing off at the victim (the manager); Kandt promptly separated the two by walking Plaintiff to the

---

[1] At the time, Officer Kandt was a police officer in his sixth year with the Ann Arbor Police Department. ECF 31, PgID 336–37.

[2] The ride-along was the Mayor of Ann Arbor. ECF 31, PgID 340.

[3] ECF 11 is body and dash camera video that Defendant submitted as an exhibit to the motion to dismiss, ECF 10. The parties routinely referred to both videos in the summary judgment briefing because each captures the incident from a different angle. *See* ECF 30, PgID 214 n.1.

front of the patrol car so that he could detain Plaintiff. ECF 11, body camera video at 5:50–6:00, dash camera video at 4:24–4:28; ECF 31, PgID 343, 346. At the same time, however, Plaintiff's girlfriend was trying to pull Plaintiff away from Kandt. ECF 11, body camera video at 5:50–6:00, dash camera video at 4:15–4:27; ECF 31, PgID 343. Once Kandt and Plaintiff stood near the hood of the patrol car, Kandt repeatedly told Plaintiff to put his hands behind his back. ECF 11, body camera video at 5:58–6:06, dash camera video at 4:25–4:35; ECF 31, PgID 344. Although Kandt did not tell Plaintiff why he was being detained, Kandt explained at his deposition that it was an investigatory detention. ECF 31, PgID 345. At the time, Kandt believed he had reasonable suspicion that Plaintiff had committed an assault. *Id.* at 345–46. Kandt also knew that Plaintiff had no weapons on him because Plaintiff had nothing in his hands and his waistband was exposed. *Id.* at 349.

Plaintiff then abruptly grabbed Kandt's wrist and was not following Kandt's commands. ECF 11, body camera video at 6:00–6:03, dash camera video at 4:25–4:35; ECF 31, PgID 346–47. Kandt believed that Plaintiff was impeding his investigation. ECF 31, PgID 346–47. While Kandt was trying to place Plaintiff's hands behind his back, Plaintiff jolted his hands to the front of his body, pushed off the car, and began rotating his body toward the street. ECF 11, body camera video at 6:04–6:08, dash camera video at 4:30–4:36; ECF 31, PgID 349. According to Kandt, he believed that Plaintiff was actively resisting his commands and that Plaintiff was trying to flee. ECF 31, PgID 346–47, 352, 354.

To counter the active resistance, Kandt tried to keep Plaintiff on the hood of the car rather than take Plaintiff down to the pavement. ECF 11, body camera video at 6:00–6:08, dash camera video at 4:30–4:37; ECF 31, PgID 351. But Kandt could not safely keep Plaintiff on the car because Plaintiff was pushing off the car and Plaintiff's hand started reaching toward the area where Kandt's taser was holstered. ECF 11, body camera video at 6:04–6:08, dash camera video at 4:30–4:37; ECF 31, PgID 352, 356.

Kandt reacted with what he described as a "takedown" to bring Plaintiff to the ground. ECF 11, body camera video at 6:04–6:12, dash camera video at 4:35–4:38; ECF 31, PgID 351. Kandt recalled that he had tried to use a straight arm bar takedown on Plaintiff, but he could not do so quickly enough to counter Plaintiff's active resistance. ECF 31, PgID 353.

While Plaintiff was on the ground, Kandt successfully handcuffed Plaintiff despite Plaintiff's girlfriend trying to obstruct the detention. ECF 11, body camera video at 6:09–7:30, dash camera video at 4:40–6:18; ECF 31, PgID 371. Plaintiff was eventually seen by paramedics and answered their questions. ECF 11, body camera video at 12:00–15:45; ECF 30-3, PgID 251–53; ECF 31, PgID 362. He was treated for a head injury and does not remember most details from that night. ECF 31, PgID 398–400. Later, the victim that Plaintiff had hit chose not to press charges, *id.* at 349, so Plaintiff was cited only for obstruction of justice—he pleaded no contest. ECF 30-6, PgID 280–81; ECF 31, PgID 401.

In all, about thirty seconds passed between when Kandt approached Plaintiff and when Plaintiff hit the ground. ECF 11, body camera video at 5:45–6:09, dash camera video at 4:13–4:38.

## LEGAL STANDARD

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must identify specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted). The Court must give "full weight to any

facts objectively compelled by . . . videotape." *Moser v. Etowah Police Dep't*, ---F. 4th---, 2022 WL 619830, at *3 (6th Cir. 2022) (citation omitted).

## DISCUSSION

The Court will first grant qualified immunity to Officer Kandt on the excessive force claim. After, the Court will grant state law immunity to Kandt for the assault and battery claims.

I.   Excessive Force Claim

To establish a § 1983 claim, Plaintiff must prove "that (1) a person, (2) acting under color of state law, (3) deprived [him] of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001) (citation omitted).

"Qualified immunity is an affirmative defense" to a § 1983 claim. *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citation omitted). It "'shield[s]' public officials from money-damages liability if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Once a defendant asserts a qualified immunity defense, "Plaintiff bears the burden of showing that [a] defendant[] [is] not entitled to qualified immunity." *Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018) (citing *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)). Under qualified immunity, the Court must engage in a two-prong analysis and may ultimately decide which prong to analyze first. *Guertin*

*v. State*, 912 F.3d 907, 932 (6th Cir. 2019) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

First, the Court must "view the facts in the light most favorable to [Plaintiff]" and "determine whether the officer committed a constitutional violation." *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citing *Burchet v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002)). For the second prong, "if there is a constitutional violation, the [C]ourt must determine whether that constitutional right was clearly established at the time of the incident." *Id.* (citation omitted).

For excessive force claims, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). The Court must look to the totality of the circumstances to determine reasonable use of force *Id.* at 396. And for that assessment, the Court weighs three factors: (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.*

The test looks "only [to] the facts that were knowable to the defendant officer[]." *Reich v. City of Elizabethtown*, 945 F.3d 968, 979 (6th Cir. 2019) (quoting *White v. Pauly*, 137 S. Ct. 548, 550 (2017)). An officer who uses force is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

Plaintiff specifically alleged that Officer Kandt's takedown was too forceful because he "threw Plaintiff face first into the concrete with his hands behind his back." ECF 31, PgID 299; *see also id.* at 424–25 (conclusions about the takedown in Plaintiff's expert report). To that end, before the present incident had occurred, "it was clearly established in this circuit that a person has a constitutional right to be free from injury-threatening physical force when he or she is not actively resisting the police." *Moser*, --- F.4th ---, 2022 WL 619830, at *4. The Court will therefore address each *Graham* factor in turn to determine whether a constitutional violation has occurred.

A.      *First Factor*

The first factor favors finding the use of force was warranted. Before the takedown, Kandt had reasonable suspicion that Plaintiff had committed a misdemeanor for simple assault. ECF 31, PgID 343, 345–46. Although Kandt was not arresting Plaintiff, Kandt had tried to detain Plaintiff so that he could investigate whether Plaintiff had committed the assault. *Id.* at 345. Indeed, Kandt did not take Plaintiff down to the ground until he was convinced that Plaintiff was impeding the investigation, actively resisting, and trying to flee. *Id.* at 346–47. The evidence supports those findings.

"[A]n officer may conduct an investigatory stop only if he 'has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity.'" *United States v. Johnson*, 620 F.3d 685, 692 (6th Cir. 2010) (quoting *United States v. Place*, 462 U.S. 696, 702 (1983)). "Reasonable suspicion is more than an ill-

defined hunch; it must be based upon a particularized and objective basis for suspecting the particular person of criminal activity." *United States v. Collazo*, 818 F.3d 247, 257 (6th Cir. 2016) (quotation omitted). An officer may draw "specific reasonable inferences . . . from the facts in light of his experience." *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

Here, a bouncer informed Kandt that Plaintiff had hit the manager in the face, and Kandt saw bouncers kicking Plaintiff out of the bar while Plaintiff looked visibly intoxicated and his shirt was in disarray. ECF 11, body camera video at 5:38–5:50, dash camera video at 4:12–4:28. Plaintiff then impeded Kandt's investigation by "actively resist[ing]" Kandt's repeated commands. ECF 11, body camera video at 5:58–6:08, dash camera video at 4:25–4:36; ECF 31, PgID 347. Those facts are enough to give any reasonable officer in the same circumstance "a particularized and objective basis" to believe that Plaintiff had completed a simple assault on the manager. *Collazo*, 818 F.3d at 257.

Although Kandt did not inform Plaintiff that he was being detained, Kandt had little time to tell Plaintiff those exact words. ECF 11, body camera video at 5:58–6:08, dash camera video at 4:25–4:36; ECF 31, PgID 346. Kandt promptly separated Plaintiff from the victim and then *repeatedly* told Plaintiff to put his hands behind his back. ECF 11, body camera video at 5:58–6:06, dash camera video at 4:25–4:36.

When no evidence shows that a suspect knows that he is being detained, the first *Graham* factor cuts against the officer. *Kent v. Oakland Cnty.*, 810 F.3d 384, 390–91 (6th Cir. 2016) (citations omitted). But Kandt's repeated commands for

Plaintiff to place his hands behind his back would suggest to any reasonable suspect that a police officer was either arresting or detaining him. To confirm, Plaintiff even responded to Kandt's order by asking, "Wait, really?" ECF 11, body camera video at 6:00–6:02, dash camera video at 4:28–4:31. Thus, the evidence shows that Plaintiff in fact knew that Officer Kandt was, at minimum, detaining him.[4]

The Sixth Circuit has held that a suspect had no "reason to be aware he was being detained" when an officer "merely ask[ed] [him] to step outside." *Goodwin v. City of Painesville*, 781 F.3d 314, 326 (6th Cir. 2015). But the Sixth Circuit has also held that a suspect was aware once the officer "instructed him that he would be tased if he failed to comply with commands." *Kent*, 810 F.3d at 391 (citation omitted). Although Kandt never threatened Plaintiff with force, Officer Kandt's *repeated* command for Plaintiff to put his hands behind his back and Plaintiff's response to those commands show that Plaintiff should have reasonably known that Kandt was detaining him before the takedown.

With that understanding, use of force while detaining a suspect for an alleged assault—even for a misdemeanor assault—is warranted because the suspected crime is considered violent. *See Latits v. Phillips*, 878 F.3d 541, 549 (6th Cir. 2017) (holding that the first *Graham* factor favored a suspect because he was "suspected of possessing narcotics—*not* a violent crime") (emphasis added); *Kapuscinski v. City of Gibralta*r, 821 F. App'x 604, 610 (6th Cir. 2020) (holding that the first *Graham* factor

---

[4] Plaintiff never asserted he did not know that Officer Kandt was detaining him. *See* ECF 31.

favored the officer using force because the officer "was responding to a violent assault."). *But see Siders v. City of Eastpointe*, 819 F. App'x 381, 390 (6th Cir. 2020) (suspect likely committed a misdemeanor domestic violence assault), *id.* at 392 (Stranch, J., dissenting) (noting that the domestic violence charge was a misdemeanor). After all, it is hard to image a violent crime that is not severe enough to warrant force. *See Graves v. Malone*, 810 F. App'x 414, 422 (6th Cir. 2020) (holding that the first *Graham* factor cuts against a plaintiff when the plaintiff "was suspected of having committed a violent crime"); *cf. Zuress v. City of Newark*, 815 F. App'x 1, 6 (6th Cir. 2020) ("Because the crimes a reasonable officer would have suspected plaintiff of having committed were *non-violent* misdemeanors without harsh penalties, the severity-of-the-crime factor weighs in plaintiff's favor.") (emphasis added); *Thomas v. Plummer*, 489 F. App'x 116, 126 (6th Cir. 2012) (holding that because a second-degree misdemeanor did not "create[] a risk of physical harm" the crime was not "a particularly serious offense") (citation omitted). In contrast, if the bouncers told Officer Kandt only that Plaintiff was too drunk, that crime—disorderly conduct—would not warrant force. *Goodwin*, 781 F.3d at 322 (collecting cases).

Still, Plaintiff reasoned that an assault was not severe enough to warrant force because Kandt could not arrest Plaintiff for misdemeanor assault.[5] ECF 31, PgID 300 (citing Mich. Comp. Laws § 764.15(1)(a)). But the argument misreads Michigan law; no law prevented Kandt from arresting or even detaining Plaintiff for misdemeanor

---

[5] Plaintiff was not arrested and charged with simple assault because the victim informed police—after the takedown—that he did not want to press charges against Plaintiff. ECF 31, PgID 349.

assault. *See* § 764.15(1)(d) ("A peace officer, without a warrant, may arrest a person" when "[t]he peace officer has reasonable cause to believe a misdemeanor punishable by imprisonment for more than 92 days . . . and reasonable cause to believe the person committed it."); *see also* § 750.81(1) ("[A] person who assaults or assaults and batters an individual, if no other punishment is prescribed by law, is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.").

Besides an argument that misapplied Michigan law, Plaintiff also failed to identify case law that showed simple assault—even as a misdemeanor—is not a severe enough crime to warrant force. One case, for example, held that "second degree bail-jumping" "carrie[d] no connotation of violence." *Shreve v. Jessamine Cnty. Fiscal Ct.*, 453 F.3d 681, 687 (6th Cir. 2006) (citation omitted). The other case reaffirmed that "disorderly conduct is not a 'serious' crime when determining whether an officer used excessive force." *Goodwin*, 781 F.3d at 322 (collecting cases). Yet neither case involved a violent crime, which is considered a severe crime under the first *Graham* factor. *See Kapuscinski*, 821 F. App'x at 610 (violent assault).

Based on the Court's research, only one Sixth Circuit judge has suggested that "a jury could conclude that [] *misdemeanor* domestic violence. . . [was] not [a] 'serious' crime[]." *Siders*, 819 F. App'x at 392 (Stranch, J., dissenting) (emphasis added) (citation omitted). But that judge's reasoning was based largely on out-of-Circuit case law. *Id.* (citing *Lee v. Tucker*, 904 F.3d 1145 (10th Cir. 2018)).

12

In any event, Plaintiff has cited no Sixth Circuit case law to support finding that misdemeanor assault is not a 'serious' crime. The Court's own research has also failed to find Sixth Circuit case law outside the *Siders* dissent. Thus, based on Sixth Circuit case law, the suspected assault, even though it was a misdemeanor, was severe enough to warrant Kandt using force because it was a violent crime. The first *Graham* factor therefore favors Officer Kandt.

> 2.   *Second Factor*

The second *Graham* factor slightly favors Officer Kandt's reasonable belief that Plaintiff threatened others. Kandt knew that Plaintiff did not have any weapons on him, and he did not believe there was a need to call backup. ECF 31, PgID 343, 349. But Kandt also believed that what Plaintiff was saying to the victim constituted a potential threat to the victim and so he separated Plaintiff from the victim. *Id.* at 347–48.[6] On top of that, Plaintiff was visibly intoxicated, and bouncers had just kicked him out of a drinking establishment, in part, because he hit the manager. ECF 11, body camera video at 5:44–5:50, dash camera video at 4:12–4:28; ECF 31, PgID 343. Shortly after, Plaintiff was actively resisting Kandt's commands and even grabbed Officer Kandt's hands. ECF 11, body camera video at 5:58–6:08, dash camera video at 4:25–4:36; ECF 31, PgID 346–47. Besides Plaintiff's conduct, a group of people stood on the sidewalk and Kandt was trying to address and thwart Plaintiff's girlfriend who was yelling at Kandt and pulling Plaintiff away from Kandt. ECF 11,

---

[6] The video evidence confirms Kandt's recollection because, although the statements are inaudible, the video shows that Plaintiff and the victim were "jaw-jacking." ECF 31, PgID 348; *see* ECF 11, body camera video at 5:48–5:58.

body camera video at 5:50–6:08, dash camera video at 4:20–4:34; ECF 31, PgID 343. Still, given all the events, Officer Kandt did not call for backup. ECF 31, PgID 343.

The Sixth Circuit has held that an "unarmed, handcuffed" suspect who is "surrounded by police officers" is not an immediate threat. *Meirthew v. Amore*, 417 F. App'x 494, 497–98 (6th Cir. 2011). But a suspect who is mouthing off at a victim or witness may be threatening. *Cf. Carpenter v. Bowling*, 276 F. App'x 423, 426 (6th Cir. 2008) (noting that a suspect did not pose a threat because, although she "raised her voice," she "never cursed at [a witness], was 'not angry' with [the witness], and never made a move toward [the witness]"). When officers are assessing those kinds of threats, the Court must factor whether officers are "forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Graham*, 490 U.S. at 396–97.

All the events unfolded in about thirty seconds while Officer Kandt was trying to not only separate Plaintiff from the victim but also detain Plaintiff and prevent Plaintiff's girlfriend from pulling him away. A reasonable officer in the same fast-unfolding encounter may very well assess Plaintiff as a threat to the victim, but the threat Plaintiff posed did not require a call for backup. Three factors support the assessment. One, Kandt saw Plaintiff mouthing off in the victim's face. ECF 31, PgID 348; *see* ECF 11, body camera video at 5:48–5:58. Two, Plaintiff grabbed Kandt's hands while Kandt was separating Plaintiff from the victim. ECF 11, body camera video at 6:00–6:03, dash camera video at 4:25–4:32; ECF 31, PgID 346–47. And three, Plaintiff appeared heavily intoxicated and disheveled. ECF 11, body camera video at

14

5:44–5:50, dash camera video at 4:12–4:28; ECF 31, PgID 343; s*ee Bozung v. Rawson*, 439 F. App'x 513, 520 (6th Cir. 2011) (noting that a police officer had no way of assessing whether a "cooperative," yet intoxicated suspect who did not possess a weapon or make verbal or physical threats to officers had threatened the officer). In the end, the second *Graham* factor slightly favors Officer Kandt.

Plaintiff's arguments fail to push the second factor toward his side because Plaintiff relied on facts that Kandt learned well after the takedown. *See* ECF 31, PgID 300–01 (highlighting statements that the victim made to another officer after the takedown and in the victim's deposition). The facts are irrelevant because the Court can look "only [to] the facts that were knowable to the defendant officer[]" at the time of the takedown. *Reich*, 945 F.3d at 979 (quotation omitted).

### 3. *Third Factor*

Last, the third and "most important *Graham* factor" favors Officer Kandt. *Bozung*, 439 F. App'x at 520. It examines "whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Although Plaintiff appeared to follow Kandt's commands to move to the car and to place his hands behind his back, Plaintiff then grabbed Officer Kandt. ECF 11, body camera video at 5:58–6:03, dash camera video at 4:25–4:32; ECF 31, PgID 346–47. And, when on the hood of the car, Plaintiff jolted his hands from behind his back, pushed off the car, and began rotating toward the street. ECF 11, body camera video at 6:04–6:08, dash camera video at 4:30–4:36; ECF 31, PgID 349. Kandt believed that Plaintiff was pushing off the car so that he could flee. ECF 31, PgID

352, 354. Kandt also believed that Plaintiff's active resistance to his commands was impeding the investigatory stop. *Id.* at 346–49.

"An officer making an investigative stop or arrest has 'the right to use some degree of physical coercion or threat thereof to effect it.'" *Miller v. Sanilac Cnty.*, 606 F.3d 240, 251 (6th Cir. 2010) (quoting *Graham*, 490 U.S. at 396). To compare, the Sixth Circuit has held that the third factor favored an officer when the suspect was "not complying with [the officer's] orders to place his hands behind his back prior to the takedown." *Bozung*, 439 F. App'x at 520. And in that case, three minutes—not thirty seconds—passed from when police interacted with the suspect to when they took him down. *Id.*

What is more, Officer Kandt reasonably believed, and the evidence confirms, that Plaintiff was actively resisting Kandt's commands: he grabbed Officer Kandt and his movement suggested flight. Admittedly, "*some* physical contact does not automatically rise to the level of active resistance." *Moser*, ---F. 4th---, 2022 WL 619830, at *5 (emphasis added). But Plaintiff did not merely touch Kandt like the suspect in *Moser*, who simply touched the officer while trying to raise her hand. *Id.* Plaintiff instead grabbed Kandt's hands, and then when Kandt tried to place Plaintiff's hands behind his back, Plaintiff jolted his hands out, pushed off the car, and began moving as if he were trying to flee toward the street. ECF 11, body camera video at 5:58–6:08, dash camera video at 4:25–4:36.

Given the active resistance and motions to flee, Kandt reasonably used force on Plaintiff. *Carter v. Carter*, 728 F. App'x 419, 423 (6th Cir. 2018) (noting that an

officer's four "modest punches" were "not constitutionally infirm" because "*some* amount of force was necessary to secure [the suspect's] arrest") (emphasis in original) (citing *Rudlaff v. Gillispie*, 791 F.3d 638, 642 (6th Cir. 2015)); *cf. Smith v. City of Troy*, 874 F.3d 938, 945 (6th Cir. 2017) (per curiam) ("It was well-established at the time of the incident in this case that a *non-violent*, *non-resisting*, or only *passively resisting* suspect who is not under arrest has a right to be free from an officer's use of force.") (emphasis added) (citation omitted).

To be sure, Kandt matched Plaintiff's active resistance because he was trying to keep Plaintiff on the hood of the car rather than bring Plaintiff down to the pavement. ECF 11, body camera video at 6:00–6:08, dash camera video at 4:30–4:36; ECF 31, PgID 351; *cf. Martin v. City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir. 2013) (holding that police officers "used severe force that did not match the threat [the suspect] presented"). But Kandt could not safely keep Plaintiff on the car given Plaintiff's active resistance and fleeing movement. ECF 11, body camera video at 6:04–6:08, dash camera video at 4:30–4:36; ECF 31, PgID 356. As a result, Kandt responded to Plaintiff's conduct by taking him to the ground in the best manner possible. ECF 31, PgID 351–354 (noting that there was not enough time to do another takedown technique such as a straight arm bar takedown).

To counter those facts, Plaintiff leaned on Sixth Circuit cases that differ from the present case. ECF 31, PgID 301–02. Three cases, for example, had factual disputes about whether the suspect was cooperating with police commands. *Reumenapp v. Oscada Twnp.*, 739 F. App'x 804, 813–14 (6th Cir. 2018); *Laury v.*

*Rodriguez*, 659 F. App'x 837, 847 (6th Cir. 2016); *Giannola v. Peppler*, 142 F.3d 433 (table), 1998 WL 96557, at *3 (6th Cir. 1998). The facts are undisputed here and the video evidence confirms that Plaintiff was actively resisting Kandt's commands.

Another case involved suspects who were already handcuffed. *Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir. 2006) ("[Plaintiff] . . . was initially compliant with the police officers' demands, and he jumped up only after his dog had been shot right in front of him. Given that [Plaintiff] was handcuffed, a reasonable officer would not have [used force]."). Plaintiff also relied on a case about a suspect who "had already been incapacitated by pepper spray." *Shreve*, 453 F.3d at 687. And one case had "a genuine dispute as to whether the officers were justified in brandishing their firearms upon approach" and whether using a taser was excessive. *Wright v. City of Euclid*, 962 F.3d 852, 866–67 (6th Cir. 2020). None of those facts occurred in the case here because Plaintiff was neither handcuffed nor incapacitated, and Officer Kandt never used his firearm or taser on Plaintiff. Plaintiff therefore failed to identify cases to support his argument under the third factor.

Besides the inapposite case law comparisons, Plaintiff's expert report about use of force does not conjure up a genuine issue of material fact. For one, the expert report never reviewed Officer Kandt's deposition. *See* ECF 31, PgID 420–21. Without reviewing the deposition, the expert did not review all the facts available to Officer Kandt. In other words, the expert witness is a Monday morning quarterback who only saw half the football game. *See Reich*, 945 F.3d at 979 (The [excessive force] test looks "only [to] the facts that were knowable to the defendant officer[]." ) (quotation

18

omitted). For another, the expert's comments about who supervised Kandt, ECF 31, PgID 423, 425, and whether Officer Kandt "improperly denied [Plaintiff's] freedom of movement," *id.* at 425, are irrelevant because there are no *Monell* or supervisory liability claims remaining, ECF 15, PgID 155–56, and Plaintiff never developed a § 1983 claim against Officer Kandt for violating his right to free movement. *See Goodwin v. Richland Cnty.*, 832 F. App'x 354, 358 (6th Cir. 2020) ("Most of [the expert's] proffered testimony was inadmissible because it was irrelevant to the sole issue before the jury: whether, at the moment that [the officer] shot [the victim], his use of deadly force was objectively reasonable."). Besides those two points, the expert report was not only written after the discovery deadline but also after Officer Kandt's summary judgment motion. ECF 27, PgID 200 (December 30, 2021 discovery deadline); ECF 31, PgID 420 (expert report dated January 17, 2022). It would thus be unfair for the Court to consider it because Officer Kandt was provided the report without reasonable notice.

At bottom, all the *Graham* factors favor Officer Kandt. Officer Kandt approached Plaintiff outside a bar while Plaintiff was highly intoxicated and after he had been removed from the bar for assaulting the bar's manager. In less than thirty seconds, Plaintiff was actively resisting Officer Kandt's commands, grabbing Kandt, and moving to flee. To prevent Plaintiff from fleeing and to counter his active resistance, Officer Kandt reasonably used a takedown to subdue Plaintiff. Although Plaintiff was injured in the takedown, the takedown was a justified, split-second choice. No reasonable jury could conclude that Officer Kandt used excessive force on

Plaintiff. *See Lyons v. City of Xenia*, 417 F.3d 565, 578 (6th Cir. 2005) (collecting cases that explain the three instances when "tackling has risen to the level of excessive force"). The Court will therefore grant qualified immunity because no constitutional violation occurred.

II.     <u>Assault and Battery Claims</u>

Battery and assault are intentional torts under Michigan law. *See Binay v. Bettendorf*, 601 F.3d 640, 653 (6th Cir. 2010). Under Mich. Comp. Laws § 691.1407(2), an officer is immune from tort claims if he satisfies three elements. First, an officer must act during his employment. *Odom v. Wayne Cnty.*, 482 Mich. 459, 480 (2008). Second, the officer must act in good faith. *Id.* And third, the officer's actions must have been discretionary. *Id.*

The only factor in dispute here is the good-faith factor. ECF 30, PgID 224 ("The determination of immunity comes down to whether 'the acts were taken in good faith.'") (quotation omitted). The Court must view the facts "from the perspective of [the] defendant." *Latits v. Phillips*, 298 Mich. App. 109, 116 (2012). The test to measure good faith "is subjective in nature." *Odom*, 482 Mich. at 481–82. Officers lack good faith when they act with a "malicious intent, capricious action[,] or corrupt conduct or willful and corrupt misconduct." *Id.* at 474 (internal citations and quotations omitted). Put differently, Officer Kandt "must establish that he acted

without malice." *Id.* at 475. Kandt bears the burden to prove the immunity defense. *Id.* at 479. And Kandt has satisfied that burden.[7]

No evidence shows that Kandt "acted in bad faith, much less that malice was a factor." *Est. of Hill v. Miracle*, 853 F.3d 306, 317 (6th Cir. 2017) (citation omitted). The present case is a far cry from an officer who throws a suspect to the ground despite the suspect cooperating with the officer's orders. *See Brown v. Lewis*, 779 F.3d 401, 420–21 (6th Cir. 2015). Because Kandt "acted in an objectively reasonable manner with the minimum force necessary to bring [Plaintiff] under control," he is immune from the state law claims for assault and battery. *Miracle*, 853 F.3d at 318. As a result, the Court will grant the summary judgment motion.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the summary judgment motion [30] is **GRANTED**.

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: March 31, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 31, 2022, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager

---

[7] Plaintiff appeared to argue that police officers in Michigan have no immunity for intentional torts. ECF 31, PgID 306–07. But the argument ignores the *Odom* factors.

21